Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 1 of 58 PAGEID #: 253
Case 1:07-cv-00558-SSB-TSB   Document 17   Filed 11/06/2007   Page 1 of 20
Case 1:07-cv-00558-SSB-TSB   Document 14   Filed 11/01/2007   Page 3 of 22

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

E.I. DU PONT DE NEMOURS & CO.,

    Defendant.

Civil Action No. 1:07 CV 558

CONSENT DECREE

J. BLACK

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 2 of 58 PAGEID #: 254
Case 1:07-cv-00558-SSB-TSB     Document 17     Filed 11/06/2007     Page 2 of 20
Case 1:07-cv-00558-SSB-TSB     Document 14     Filed 11/01/2007     Page 4 of 22

## TABLE OF CONTENTS:

| | | |
|---|---|---|
| I. | JURISDICTION AND VENUE | 4 |
| II. | APPLICABILITY | 5 |
| III. | DEFINITIONS | 6 |
| IV. | CIVIL PENALTY | 9 |
| V. | COMPLIANCE REQUIREMENTS | 11 |
| VI. | PERMITS | 20 |
| VII. | REPORTING REQUIREMENTS | 23 |
| VIII. | STIPULATED PENALTIES | 26 |
| IX. | FORCE MAJEURE | 31 |
| X. | DISPUTE RESOLUTION | 34 |
| XI. | INFORMATION COLLECTION AND RETENTION | 36 |
| XII. | EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS | 38 |
| XIII. | COSTS | 39 |
| XIV. | NOTICES | 40 |
| XV. | EFFECTIVE DATE | 43 |
| XVI. | RETENTION OF JURISDICTION | 43 |
| XVII. | MODIFICATION | 43 |
| XVIII. | TERMINATION | 43 |
| XIX. | PUBLIC PARTICIPATION | 44 |
| XX. | SIGNATORIES/SERVICE | 45 |
| XXI. | INTEGRATION | 46 |
| XXII. | FINAL JUDGMENT | 46 |
| XXIII. | APPENDICES | 46 |

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 3 of 58 PAGEID #: 255
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 3 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 5 of 22

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency (U.S. EPA), has filed a complaint concurrently with this Consent Decree, alleging that Defendant E.I. du Pont de Nemours and Company ("DuPont" or "Defendant"), violated Sections 111 and 165, 42 U.S.C. §§ 7411 and 7475, of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7401 et seq., the Title V Permit requirements of the Act, 42 U.S.C. § 7661; and the federally enforceable State Implementation Plans (SIPs) for Kentucky, Louisiana, Ohio and Virginia approved by EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410, which incorporate and/or implement the above-listed federal requirements, with respect to emissions of sulfur dioxide and sulfuric acid mist;

WHEREAS, the Complaint against DuPont alleges that DuPont constructed, reconstructed or modified certain Sulfuric Acid Plants without obtaining required permits, installing required control technology, meeting emission limits, and complying with requirements for monitoring, record-keeping and reporting, as specified in the Act;

WHEREAS, the State of Ohio, the State of Louisiana, and David K. Paylor, Director, Virginia Department of Environmental Quality (collectively, the "State Plaintiffs") have filed Complaints in Intervention joining in the claims of the United States, and all Parties consent to such intervention;

WHEREAS, DuPont has agreed to reduce emissions from the four Sulfuric Acid Plants named in the Complaint and subject to this Consent Decree to levels no greater than emission levels equivalent to those that would result from the use of Best Available Control Technology (BACT), as defined at 40 C.F.R. § 52.21(b)(12), and to continue implementing best work practices at these Sulfuric Acid Plants;

WHEREAS, DuPont does not admit any liability to the United States or any of the State Plaintiffs arising out of the acts or omissions alleged in the Complaint and this Consent Decree resolves all allegations stated in the United States' and State Plaintiffs' Complaints, and nothing

3

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 4 of 58 PAGEID #: 256
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 4 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 6 of 22

in the Complaint or this Consent Decree, nor the execution and implementation of this Consent Decree, shall be treated as an admission or evidence of any violation of the Act and implementing regulations cited herein in any litigation or forum whatsoever, provided that the terms of this Consent Decree may be used in any action or dispute resolution proceeding to enforce the terms of this Consent Decree;

WHEREAS, DuPont has worked cooperatively with the United States and State Plaintiffs to structure a comprehensive program that will result in significant reductions of sulfur dioxide emissions annually from four DuPont Sulfuric Acid Plants in four states;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

I.     JURISDICTION AND VENUE

· 1.     This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. § 7413(b), and over the Parties. Venue lies in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because some of the violations alleged in the Complaint are alleged to have occurred in, and Defendant conducts business in, this judicial district. Defendant consents to this Court's jurisdiction over this Consent Decree and any action to enforce this Consent Decree, and to venue in this judicial district. For purposes of this Consent Decree and any action to enforce this Consent Decree, Defendant consents to this Court's jurisdiction over the Defendant.

2.     For purposes of this Consent Decree, Defendant agrees that the Complaint and the

4

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 5 of 58 PAGEID #: 257
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 5 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 7 of 22

State Plaintiffs' Complaints in Intervention state claims upon which relief may be granted pursuant to Sections 111 and 165 of the Act, 42 U.S.C. §§ 7411, 7475 and/or pursuant to state law.

3.      Notice of the commencement of this action has been given to the States of Louisiana and Ohio and to the Commonwealths of Kentucky and Virginia, as required by Section 113 of the Act, 42 U.S.C. 7413.

## II.    APPLICABILITY

4.      The obligations of this Consent Decree apply to and are binding upon the United States and the State Plaintiffs, and upon Defendant and its officers, employees, agents, subsidiaries, successors, assigns, or other entities or persons otherwise bound by law.

5.      At least 30 days prior to any transfer of ownership or operation of any of the Facilities or any portion thereof, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer to the United States and to the State Plaintiff in which the relevant Facility is located, in accordance with Section XIV of this Decree (Notices). Any attempt to transfer ownership or operation of a Facility, or any portion thereof, without complying with the foregoing notice requirements constitutes a violation of this Decree. No such transfer, whether in compliance with the notice requirements of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented with respect to the Facility(ies) involved in the transfer, unless:

a.      the transferee agrees in writing to undertake the obligations required by this Consent Decree with respect to the Facility(ies) being transferred, and to intervene as a Defendant in this action for the purpose of being bound by the applicable terms of this Consent Decree; and

b.      the United States and the State Plaintiff, after receiving information

5

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 6 of 58 PAGEID #: 258
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 6 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 8 of 22

sufficient to demonstrate that the transferee has the technical and financial means to comply with the applicable obligations of this Consent Decree, consent in writing to substitute the transferee for Defendant with respect to such obligations; and

        c.     the Court approves such substitution.

6.    In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.   DEFINITIONS

7.    Terms used in this Consent Decree that are defined in the Act or in federal and state regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

        a.     "Acid mist" shall mean the pollutant sulfuric acid mist.

        b.     "Burnside" shall mean DuPont's Facility located at 3460 SR-44, Darrow, LA 70725.

        c.     "CEMS" or "Continuous Emission Monitoring System" shall mean equipment that continuously measures and records the emission rate of a pollutant, in pounds emitted per ton of 100% Sulfuric Acid Produced.

        d.     "Complaint" shall mean the Complaint filed by the United States, and the Complaints in Intervention filed by the State Plaintiffs.

        e.     "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXIII), but in the event of any conflict between the text of this Consent Decree and any Appendix, the text of this Consent Decree shall control.

        f.     "Day" shall mean a calendar day unless expressly stated to be a working day. In computing any period of time under this Consent Decree, where the last day would fall on a

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 7 of 58 PAGEID #: 259
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 7 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 9 of 22

Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

      g.    "Defendant" shall mean E.I. du Pont de Nemours & Co.

      h.    "Effective Date" shall have the meaning given in Paragraph 84.

      i.    "Facilities" shall mean DuPont's Burnside, Fort Hill, James River, and Wurtland operating sites that contain Sulfuric Acid Plants. Each of these Sites may be referred to as a "Facility."

      j.    "Fort Hill" shall mean DuPont's Facility located at 11215 Brower Road, North Bend, Ohio 45052.

      k.    "James River" shall mean DuPont's Facility located at 1201 Bellwood Rd., Richmond, VA 23237.

      l.    "Malfunction" shall mean, consistent with 40 C.F.R. § 60.2, any sudden, infrequent, and not reasonably preventable failure of air pollution control equipment, process equipment, or a process to operate in a normal or usual manner, but shall not include failures that are caused in part by poor maintenance or careless operation.

      m.    "Mass Cap" shall mean the maximum amount of $SO_2$ emissions for each Sulfuric Acid Plant expressed in tons of sulfur dioxide emitted during each 12-month period consisting of the most recently concluded month and the eleven months immediately preceding it. In determining compliance with the Mass Cap, all $SO_2$ emissions from a Sulfuric Acid Plant, including emissions during times of Startup, Shutdown, and Malfunction, shall be counted.

      n.    "Month" shall mean calendar month.

      o.    "100% Sulfuric Acid Produced" shall mean the stoichiometric quantity of sulfuric acid that would be produced at a Sulfuric Acid Plant if all sulfur trioxide ($SO_3$) exiting the converter were used to produce anhydrous sulfuric acid. For purposes of this definition, scrubber byproduct (if any) shall be considered to be included in "100% Sulfuric Acid

7

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 8 of 58 PAGEID #: 260
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 8 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 10 of 22

Produced".

p.     "NSR" shall mean a program for New Source Review under the Act.
Specifically, "non-attainment NSR" and "major NSR" as used herein refer to the non-attainment area New Source Review program within the meaning of Part D of Subchapter I of the Act, 42 U.S.C. §§ 7501-7515; "minor NSR" as used herein refers to any state, regional or local statutes, ordinances or regulations calling for review and approval of non-major new and modified sources of air pollution.

q.     "NSPS" shall mean the standards of performance for new stationary sources codified at 40 C.F.R. Part 60. General NSPS requirements are codified at 40 C.F.R. Part 60, Subpart A. NSPS requirements specifically for sulfuric acid plants are codified at 40 C.F.R. Part 60, Subpart H.

r.     "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

s.     "PSD" shall mean the attainment area New Source Review program (prevention of significant deterioration) within the meaning of Part C of Subchapter I of the Act, 42 U.S.C. §§ 7470-7492.

t.     "Parties" shall mean the United States, the State of Louisiana, the State of Ohio, and David K. Paylor, Director, Virginia Department of Environmental Quality, and DuPont.

u.     "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

v.     "Short-term Limit" shall mean an emission limit for a pollutant for a Sulfuric Acid Plant specified herein, expressed in terms of pounds emitted per ton of 100% Sulfuric Acid Produced ("lbs/ton"), averaged over each 3-hour period consisting of the most recently completed hour and the two hours preceding it.

8

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 9 of 58 PAGEID #: 261
Case 1:07-cv-00558-SSB-TSB   Document 17    Filed 11/06/2007    Page 9 of 20
Case 1:07-cv-00558-SSB-TSB   Document 14    Filed 11/01/2007    Page 11 of 22

w.    "Shutdown" shall mean the cessation of operation of a Sulfuric Acid Plant
for any reason. Shutdown begins at the time the feed of sulfur or sulfur-bearing materials to the
furnace ceases.

x.    "$SO_2$" shall mean the pollutant sulfur dioxide.

y.    "Startup" shall mean, with respect to any Sulfuric Acid Plant, the period of
time, beginning when the feed of sulfur or sulfur-bearing materials to the furnace commences
and lasting for no more than 24 hours, during which a Sulfuric Acid Plant has an elevated rate
of $SO_2$ emissions.

z.    "State Plaintiffs" or "States" shall mean the State of Louisiana, the State of
Ohio, and David K. Paylor, Director, Virginia Department of Environmental Quality.

aa.    "Sulfuric Acid Plant" or "Plant" shall mean a process unit engaged in the
production of sulfuric acid and related products using the contact process. DuPont operates
Sulfuric Acid Plants, that are subject to the requirements of this Consent Decree, at the
Burnside, Fort Hill, James River, and Wurtland Facilities.

bb.    "Title V Permit" shall mean a permit required by or issued pursuant to the
requirements of 42 U.S.C. §§ 7661 - 7661f.

cc.    "Ton" or "tons" shall mean short ton or short tons.

dd.    "United States" shall mean the United States of America, acting on behalf of
U.S. EPA.

ee.    "U.S. EPA" shall mean the United States Environmental Protection Agency
and any of its successor departments or agencies.

ff.    "Wurtland" shall mean DuPont's Facility located at 400 Harris Rd.,
Wurtland, KY 41144.

### IV.   CIVIL PENALTY

8.    Within thirty (30) days after the Effective Date of this Consent Decree, Defendant

9

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 10 of 58 PAGEID #: 262
Case 1:07-cv-00558-SSB-TSB     Document 17     Filed 11/06/2007     Page 10 of 20
Case 1:07-cv-00558-SSB-TSB     Document 14     Filed 11/01/2007     Page 12 of 22

shall pay to the Plaintiffs $4,125,000 (four million one hundred twenty-five thousand dollars) as a civil penalty, in the following manner:

     a.    $2,475,000 to the United States by FedWire Electronic Funds Transfer (EFT) to the U.S. Department of Justice in accordance with instructions to be provided to Defendant, following lodging of the Consent Decree, by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of Ohio. At the time of payment, Defendant shall simultaneously send written notice of payment and a copy of any transmittal documentation (which shall reference DOJ case number 90-5-2-1-07950, USAO file number 2007VO1500, and the civil action number of this case) to the United States in accordance with Section XIV of this Decree (Notices).

     b.    $550,000 to the State of Louisiana by certified check made payable to the Louisiana Department of Environmental Quality and sent to Darryl Serio, Fiscal Director, Office of Management and Finance, LDEQ, P.O. Box 4303, Baton Rouge, Louisiana 70821-4303.

     c.    $550,000 to the State of Ohio by cashier's certified check payable to the order of "Treasurer, State of Ohio" and delivered to Martha Sexton, Paralegal, or her successor, Office of the Attorney General of Ohio, Environmental Enforcement Section, 30 East Broad Street, 25th Floor, Columbus, Ohio 43215-3400. The memo portion of the check, or some other prominent location on the transmittal letter or documentation, shall include reference to "A. G. EAGO No. 340756." Twenty percent (20%) of the civil penalty paid to the State of Ohio, totaling $110,000, shall be directed to Ohio EPA's Clean Diesel School Bus Program Fund (Fund 5CD). The balance shall be deposited in accordance with R. C. 3704.06.

     d.    $550,000 to the Commonwealth of Virginia in the form of a certified check or cashier's check, payable to "the Treasurer of Virginia" and delivered to: Receipts Control, Department of Environmental Quality P.O. Box 1104, Richmond, VA 23218.

10

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 11 of 58 PAGEID #: 263
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 11 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 13 of 22

9.     If any portion of the civil penalty due to the United States or a State Plaintiff is not
paid when due, Defendant shall pay interest on the amount past due, accruing from the
Effective Date through the date of payment, at the rate specified in 28 U.S.C. § 1961. Interest
payment under this Paragraph shall be in addition to any stipulated penalty due.

10.     No amount of the civil penalty or interest paid by Defendant shall be used to reduce
its federal or state tax obligations.

V.     COMPLIANCE REQUIREMENTS

11.     $SO_2$ Emission Limits, Mass Caps, and Schedule of Compliance:

a.     Burnside: No later than September 1, 2009, the Burnside Sulfuric Acid Plant
shall meet a short-term $SO_2$ emission limit of 2.4 lbs/ton and shall be subject to a Mass Cap of
1007 tons. Defendant shall demonstrate compliance with this Mass Cap as of September 1,
2010 for the 12-month period of September 2009 through August 2010, and thereafter as of the
first of each month for the immediately preceding consecutive 12-month period, in the manner
specified in Paragraph 19.a.ii.

b.     James River: No later than March 1, 2010, the James River Sulfuric Acid
Plant shall meet a short-term $SO_2$ emission limit of 1.5 lbs/ton and shall be subject to a Mass
Cap of 123 tons. Defendant shall demonstrate compliance with this Mass Cap as of March 1,
2011 for the 12-month period of March 2010 through February 2011, and thereafter as of the
first of each month for the immediately preceding consecutive 12-month period, in the manner
specified in Paragraph 19.a.ii.

c.     Fort Hill: No later than March 1, 2011 or the Alternate Compliance Date if
selected, the Fort Hill Sulfuric Acid Plant shall meet a short-term $SO_2$ emission limit of 2.2
lbs/ton and shall be subject to a Mass Cap of 281 tons. Defendant shall demonstrate
compliance with this Mass Cap as of March 1, 2012 (for the 12-month period of March 2011
through February 2012), or as of March 1, 2013 (for the 12-month period of March 2012

11

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 12 of 58 PAGEID #: 264
Case 1:07-cv-00558-SSB-TSB   Document 17   Filed 11/06/2007   Page 12 of 20
Case 1:07-cv-00558-SSB-TSB   Document 14   Filed 11/01/2007   Page 14 of 22

through February 2013) if the Alternate Compliance Date is selected; and thereafter as of the first of each month for the immediately preceding consecutive 12-month period, in the manner specified in Paragraph 19.a.ii.

    d.    Wurtland: No later than March 1, 2012 or the Alternate Compliance Date if selected, the Wurtland Sulfuric Acid Plant shall meet a short-term $SO_2$ emission limit of 1.7 lbs/ton and shall be subject to a Mass Cap of 248 tons. Defendant shall demonstrate compliance with this Mass Cap as of March 1, 2013 (for the 12-month period of March 2012 through February 2013), or as of March 1, 2012 (for the 12-month period of March 2011 through February 2012) if the Alternate Compliance Date is selected; and thereafter as of the first of each month for the immediately preceding consecutive 12-month period, in the manner specified in Paragraph 19.a.ii.

    12.    $SO_2$ Emission Limits During Startup:    After the date specified in Paragraph 11 for each Sulfuric Acid Plant's compliance with the short-term $SO_2$ emission limit, that short-term emission limit shall apply at all times (including periods of Shutdown), except for periods of Startup and Malfunction.

    a.    Notwithstanding the provisions of Paragraph 11, after the date specified in Paragraph 11 for compliance at each Sulfuric Acid Plant, for any three-hour period that includes at least one hour during Startup, each Sulfuric Acid Plant shall meet the Short-term Limit for $SO_2$ emissions specified in Appendix A.

    b.    The Short-term Limits on $SO_2$ emissions specified in Appendix A shall apply during any Malfunction period that occurs during Startup, unless the total mass of $SO_2$ emissions that result from keeping the Plant in operation during and after the Malfunction is in good faith estimated to be less than the total $SO_2$ emissions that would result from shutting down the Plant during Malfunction and subsequently having another Startup at that Sulfuric Acid Plant. Consistent with Paragraph 17, Defendant shall take all steps practicable to

12

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 13 of 58 PAGEID #: 265
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 13 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 15 of 22

minimize the frequency of occurrence of Startup and Malfunction and the duration of each Startup and Malfunction.

13.    Interim $SO_2$ Emission Limits:

a.    Fort Hill:  The Fort Hill Sulfuric Acid Plant shall meet an interim Short-term Limit for $SO_2$ emissions of 20.0 lbs/ton, beginning no later than the first operation of the Fort Hill Sulfuric Acid Plant after its first regularly scheduled maintenance turnaround that occurs after the Effective Date of this Consent Decree and continuing until March 1, 2011 or the Alternate Compliance Date if selected.

b.    Wurtland:  The Wurtland Sulfuric Acid Plant shall meet an interim Short-term Limit for $SO_2$ emissions of 21.0 lbs/ton, beginning no later than the Effective Date of this Consent Decree and continuing until March 1, 2012 or the Alternate Compliance Date if selected.

14.    Acid Mist Emission Limits:  Each of the Sulfuric Acid Plants shall comply with the NSPS, Subpart H sulfuric acid mist emission limitation of 0.15 lbs/ton of 100% Sulfuric Acid Produced, as set forth at 40 C.F.R. § 60.83, no later than the date specified in Paragraph 11 for that Plant's compliance with the Short-term Limit for $SO_2$ emissions set forth in Paragraph 11. Compliance with this limit is to be demonstrated using the performance test required by Paragraph 20.a.i of this Consent Decree.

15.    Alternate Compliance Dates for Fort Hill and Wurtland:  Defendant may select Alternate Compliance Dates for the Fort Hill and Wurtland Sulfuric Acid Plants, provided that Defendant gives written notice of that selection to the United States and the State of Ohio no later than March 1, 2010 and that Defendant selects Alternate Compliance Dates for both the Fort Hill and Wurtland Plants.  If Defendant so selects the Alternate Compliance Dates then for purposes of all other provisions of this Consent Decree with respect to the Fort Hill and Wurtland Plants the Alternate Compliance Dates set forth in this Paragraph shall be deemed the

13

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 14 of 58 PAGEID #: 266
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 14 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 16 of 22

dates specified for compliance in Paragraph 11. If Defendant so selects the Alternate Compliance Dates, then:

      a.    the Fort Hill Plant shall meet the interim $SO_2$ emission limit specified in Paragraph 13.a from the beginning time specified in Paragraph 13.a and continuing until March 1, 2012; shall meet the short-term $SO_2$ emission limit specified in Paragraph 11.c and the acid mist emission limit specified in Paragraph 14 no later than March 1, 2012; and shall demonstrate compliance with the Mass Cap specified in Paragraph 11.c as of March 1, 2013 (for the 12-month period of March 2012 through February 2013); and

      b.    the Wurtland Plant shall meet the interim $SO_2$ emission limit specified in Paragraph 13.b from the beginning time specified in Paragraph 13.b and continuing until March 1, 2011; shall meet the short-term $SO_2$ emission limit specified in Paragraph 11.d and the acid mist emission limit specified in Paragraph 14 no later than March 1, 2011; and shall demonstrate compliance with the Mass Cap specified in Paragraph 11.d as of March 1, 2012 (for the 12-month period of March 2011 through February 2012).

16.    NSPS Applicability: Each Sulfuric Acid Plant covered by this Consent Decree shall be considered an affected facility for purposes of the New Source Performance Standard (NSPS), 40 C.F.R. Part 60, Subpart H, no later than the date specified for compliance with the $SO_2$ emission limit for such Plant as set forth in Paragraph 11 above. After such date, each Sulfuric Acid Plant shall comply with all applicable requirements for affected facilities under the NSPS 40 C.F.R. Part 60, Subparts A and H, or with the requirements of this Consent Decree if more stringent. Satisfactory compliance with notice and compliance demonstration obligations set forth in this Consent Decree shall be deemed to satisfy all applicable initial notification and compliance demonstration requirements of NSPS Subparts A and H.

17.    Best Practices: At all times after the Effective Date of this Consent Decree, including periods of Startup, Shutdown, and Malfunction, Defendant shall to the extent

14

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 15 of 58 PAGEID #: 267
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 15 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 17 of 22

practicable maintain and operate each of its Sulfuric Acid Plants, including associated air

pollution control equipment, in a manner consistent with good air pollution control practices for

minimizing emissions, consistent with 40 C.F.R. § 60.11 (d).

18.    O & M Plans: Defendant shall prepare an Operation and Maintenance Plan ("O & M

Plan") for each Sulfuric Acid Plant. Each O & M plan shall describe operating and

maintenance procedures necessary to (1) minimize the frequency of Sulfuric Acid Plant

Shutdowns (thereby reducing the number of Startups of each Sulfuric Acid Plant) and (2)

minimize the quantity of emissions of all pollutants at all times, including periods of Startup

and Malfunction.

a.    For the Burnside Sulfuric Acid Plant, Defendant shall submit a proposed O

& M Plan to U.S. EPA and the State of Louisiana no later than 180 days after the Effective Date

of this Consent Decree. For the James River, Fort Hill, and Wurtland Plants, Defendant shall

submit a proposed O & M Plan to U.S. EPA and to the State Plaintiff in which the Plant is

located no later than 120 days before the date specified in Paragraph 11 for compliance with the

short-term $SO_2$ emission limit applicable to that Plant. U.S. EPA will review the O & M Plan

for each Sulfuric Acid Plant and, after a reasonable opportunity for review and comment by the

pertinent State, may in writing approve, disapprove, or approve with modifications, the O & M

Plan. If U.S. EPA disapproves any O & M Plan submitted by Defendant, within 60 days of

receipt of the disapproval Defendant shall submit a revised O & M Plan correcting the

deficiencies noted in the disapproval.

b.    On and after the date specified in Paragraph 11 for compliance with the

short-term $SO_2$ emission limit applicable to a Plant, Defendant shall comply with the O & M

Plan for that Plant unless and until such O & M Plan is disapproved or approved with

modifications. Any failure to so comply shall be a violation of this Consent Decree. Once an O

& M Plan has been approved or approved with modifications, Defendant shall comply with that

15

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 16 of 58 PAGEID #: 268
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 16 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 18 of 22

O & M Plan as approved, and failure to do so shall be a violation of this Consent Decree. Any failure by U.S. EPA to act on a submitted O & M Plan shall not extend the compliance dates specified in Paragraphs 11 and 13 nor excuse any non-compliance with any emission limit or Mass Cap specified in this Consent Decree.

   c. No less frequently than once every three years, Defendant shall review, and update as necessary, its approved O & M Plan for each Sulfuric Acid Plant. Within 30 days after each such review, Defendant shall provide written notice to U.S. EPA and to the State Plaintiff in which the relevant Plant is located either (1) of changes made to the O & M Plan or (2) that no change to the O & M Plan was required. U.S. EPA may, after a reasonable opportunity for review and comment by the pertinent State, approve, disapprove, or approve with modifications, any changes to an O & M Plan pursuant to this sub-Paragraph. Defendant shall comply with each changed O & M Plan immediately upon submission of the changes unless and until the changes are disapproved or approved with modifications, and any failure to so comply shall be a violation of this Consent Decree. Once changes to an O & M Plan have been approved or approved with modifications, Defendant shall comply with the changed O & M Plan as approved, and failure to do so shall be a violation of this Consent Decree. Any failure by U.S. EPA to act on submitted changes to an O & M Plan shall not extend the compliance dates specified in Paragraphs 11 and 13 nor excuse any non-compliance with any emission limit or Mass Cap specified in this Consent Decree.

   d. Any disapproval or approval with modifications by U.S. EPA under this Paragraph shall be subject to Dispute Resolution pursuant to Section X.

  19. Emissions Monitoring:

   a. At each of its Sulfuric Acid Plants, no later than the earlier of (i) the date specified for compliance with the $SO_2$ emission limit for such Plant as set forth in Paragraph 11 or (ii) the date specified for compliance with the interim $SO_2$ emission limit for such Plant as set

16

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 17 of 58 PAGEID #: 269
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 17 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 19 of 22

forth in Paragraph 13, Defendant shall install and make operational a $SO_2$ continuous emissions monitoring system (CEMS). Except during CEMS breakdowns, repairs, calibration checks, and zero span adjustments, the CEMS shall be in continuous operation, and shall be used at each Sulfuric Acid Plant to demonstrate compliance with the $SO_2$ emission limits and Mass Caps established in Paragraphs 11, 12, and 13 of this Consent Decree. Defendant shall monitor and record $SO_2$ emissions from each Sulfuric Acid Plant as follows:

        i.      The $SO_2$ CEMS shall continuously monitor and record the 3-hour arithmetic average $SO_2$ emission rate from each Sulfuric Acid Plant in units of pounds of $SO_2$ emitted per ton of 100% acid produced.

        ii.     By the fifteenth day of each month, Defendant shall determine and record the total mass of $SO_2$ emitted from each Sulfuric Acid Plant in the 12-month period preceding the current month.

        iii.    The CEMS shall be installed, certified, calibrated, maintained, and operated in accordance with the applicable requirements of 40 C.F.R. §§ 60.11, 60.13, Part 60, Appendix B Performance Specification 2, and Part 60 Appendix F Procedure 1. If an oxygen monitor is necessary, it shall meet 40 C.F.R. Part 60, Appendix B Performance Specification 3. If a tail gas volumetric flow rate monitor is necessary, it shall meet 40 C.F.R. Part 60, Appendix B Performance Specification 6.

        b.     Defendant shall submit to U.S. EPA for review and approval a written $SO_2$ CEMS Plan for each Sulfuric Acid Plant, no later than 180 days after the Effective Date of this Consent Decree. Each $SO_2$ CEMS Plan shall describe how Defendant proposes to implement the monitoring requirements of Paragraph 19.a. Each $SO_2$ CEMS Plan shall include procedures for accurately monitoring pounds of $SO_2$ emissions per ton of 100% sulfuric acid production and the $SO_2$ mass emission rate. U.S. EPA will review each $SO_2$ CEMS Plan and may, after a reasonable opportunity for review and comment by the relevant State, approve it, disapprove it,

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 18 of 58 PAGEID #: 270
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 18 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 20 of 22

or approve it with modifications. Such approval, disapproval, or approval with modifications shall be in writing. If a $SO_2$ CEMS Plan is disapproved, within 60 days of receipt of the disapproval, Defendant shall submit a revised $SO_2$ CEMS Plan that corrects deficiencies noted in the disapproval. Once an $SO_2$ CEMS Plan has been approved or approved with modifications, Defendant shall, upon installation of the $SO_2$ CEMS at each Sulfuric Acid Plant, implement and thereafter comply with the $SO_2$ CEMS Plan, and failure to do so shall be a violation of this Consent Decree. Any failure by U.S. EPA to act on a submitted $SO_2$ CEMS Plan shall neither extend the dates by which the $SO_2$ CEMS must be installed nor excuse any non-compliance with the $SO_2$ CEMS monitoring requirements of this Paragraph. Approval of each $SO_2$ CEMS Plan shall constitute approval of an alternative monitoring plan for purposes of NSPS, per 40 C.F.R. § 60.13(i).

     c.    Defendant shall take all steps necessary to avoid CEMS breakdowns and minimize CEMS downtime. This shall include, but is not limited to, operating and maintaining the CEMS in accordance with best practices and maintaining an on-site inventory of spare parts or other supplies necessary to make rapid repairs to the equipment.

     d.    In the event of CEMS downtime lasting longer than 24 hours, Defendant shall demonstrate compliance with the applicable $SO_2$ emission limits and Mass Caps in Paragraph 11, 12, and 13 using suitable methods, *e.g.*, the Reich test, National Air Pollution Control Administration Publication No. 999-AP-13. Reich tests or tests using other suitable methods shall be conducted and analyzed once every three hours while the Sulfuric Acid Plant is operating until the CEMS resumes operation. Reich test data or data from other suitable test methods shall be converted to units of lbs/ton using best engineering judgment. In the event of downtime of the flow monitor or other equipment necessary for a Reich test or other suitable test method, Defendant shall estimate and record the $SO_2$ mass emission rate in accordance with best engineering judgment.

18

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 19 of 58 PAGEID #: 271
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 19 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 21 of 22

20.    Performance Testing

a.    For each Sulfuric Acid Plant, Defendant shall conduct the following performance tests, and shall submit to U.S. EPA and to the State in which the Sulfuric Acid Plant is located a report documenting the results of the performance tests, no later than 180 days after the date specified in Paragraph 11 above for such Sulfuric Acid Plant's compliance with its short-term $SO_2$ emission limit:

i.    a performance test measuring the emission rate of acid mist from each Sulfuric Acid Plant in accordance with the applicable requirements of 40 C.F.R Part 60 Appendix A, Reference Method 8, or an alternative method approved by EPA. This performance test shall be used to demonstrate compliance with the acid mist emission limit established in Paragraph 14 and may serve as the NSPS performance test required under 40 C.F.R. § 60.8. Defendant shall take all steps necessary to assure accurate measurements of 100% sulfuric acid production during each test run.

ii.    a performance test measuring the emission rate of $SO_2$ from each Sulfuric Acid Plant, in accordance with the applicable requirements of 40 C.F.R. Part 60 Appendix A, Reference Method 8, and Part 60 Appendix B, Performance Specification 2. This test shall consist of at least nine reference method test runs and may serve as the CEMS relative accuracy test required under Performance Specification 2. If applicable, this test may also serve as the NSPS performance test required under 40 C.F.R. § 60.8. Defendant shall take all steps necessary to assure accurate measurements of 100% sulfuric acid production during each test run.

b.    No later than 30 days before any performance test required by this Consent Decree is conducted, Defendant shall provide notice of its intent to conduct such test to U.S. EPA and the State in which the Sulfuric Acid Plant is located, using the procedures specified in Section XIV (Notice). This notification must include the scheduled date of the test, an

19

Case: 1:07-cv-00558-SSB-TSB Doc #: 18 Filed: 01/24/08 Page: 20 of 58 PAGEID #: 272
Case 1:07-cv-00558-SSB-TSB    Document 17    Filed 11/06/2007    Page 20 of 20
Case 1:07-cv-00558-SSB-TSB    Document 14    Filed 11/01/2007    Page 22 of 22

emissions test protocol, a description of the planned operating rate and operating conditions, and the procedures that will be used to measure 100% sulfuric acid production. If U.S. EPA or the State Plaintiff requires any adjustment of the testing protocol or operating conditions, Defendant shall make such adjustments and conduct the performance test in conformity with U.S. EPA's and the State's requirements.

21.     Facility Shutdown: Defendant, in its sole discretion, may permanently cease operation of any Facility, except Burnside, prior to the compliance date specified for that Sulfuric Acid Plant in Paragraph 11. No later than 90 days prior to the permanent cessation of operation of a Facility, Defendant shall notify the U.S. EPA and the relevant state as specified in Section XIV (Notices) of its intent to cease operations at that Facility.

        a.     Upon the cessation of operation of a Facility, Defendant shall surrender all air pollution permits for that Facility to the permitting authority. Defendant shall not file any application for emission reduction credits as a result of such cessation of operation. Defendant shall not use any emission reductions resulting from such cessation of operation, in any netting calculation. Defendant shall not sell any emission credits obtained as a result of emission reductions resulting from such cessation of operation.

        b.     Provided that Defendant has complied with the requirements of Paragraph 21.a, then upon the cessation of operation of a Facility, that Facility shall cease to be subject to this Consent Decree, except for the obligation to pay any stipulated penalties that may be due pursuant to Section VII with respect to that Facility and the recordkeeping requirement in Paragraph 73.

## VI.    PERMITS

22.     Defendant shall obtain all required federal, state, or local permits necessary for performing any compliance obligation under this Consent Decree, including without limitation permits for construction of pollution control technology and the installation of equipment at the

20

Sulfuric Acid Plants. Defendant may seek relief under the provisions of Section IX (Force Majeure) of this Consent Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation if Defendant has submitted timely and administratively complete applications and has taken all other actions necessary to obtain such permit(s) or approval(s).

23.     No later than 180 days after the date specified for compliance, as set forth in Paragraph 11 above, with the $SO_2$ emission limit for each Sulfuric Acid Plant, Defendant shall submit an administratively complete application to the relevant permitting authority to incorporate the following requirements into federally enforceable minor or major new source review permits or other permits (other than Title V permits) which are federally enforceable for each Facility:

a.     The Short-term Limits for $SO_2$ emissions and the Mass Caps established in Paragraph 11 of this Consent Decree;

b.     The Short-term Limit for $SO_2$ emissions during Startup established in Paragraph 12 of this Consent Decree;

c.     The acid mist emission limit established in Paragraph 14 of this Consent Decree;

d.     The monitoring requirements established in Paragraph 19 of this Consent Decree including the requirement to meet the quality assurance procedures required by 40 C.F.R. Part 60 Appendix F;

e.     The applicability of 40 C.F.R. Part 60, Subparts A and H to the Sulfuric Acid Plant and all requirements therein.

24.     Following submission of the complete permit applications, Defendant shall cooperate with the applicable federal, state or local agency by promptly submitting to the applicable agency all available information that the applicable agency seeks following its

receipt of the permit materials. Defendant shall file any applications necessary to incorporate the requirements of those permits into the Title V Permit for the relevant Facility in accordance with state Title V rules.

25.    Emission Limits and Standards: Prior to termination of the Consent Decree, Defendant shall incorporate the following Consent Decree requirements into Title V operating permits as described in Paragraph 27:

    a.    The Short-term Limits and Mass Caps for $SO_2$ emissions established in Paragraph 11 of this Consent Decree;

    b.    The Short-term Limits for $SO_2$ emissions during Startup established in Paragraph 12 of this Consent Decree;

    c.    The acid mist emission limit established in Paragraph 14 of this Consent Decree;

    d.    The monitoring requirements established in Paragraph 19 of this Consent Decree, including the requirement to meet the quality assurance procedures required by 40 C.F.R. Part 60 Appendix F;

    e.    A requirement that the $SO_2$ and acid mist emission limits shall not be relaxed; and

    f.    The applicability of 40 C.F.R. Part 60, Subparts A and H, and all requirements therein, to the Sulfuric Acid Plants.

26.    Requirements incorporated into operating permits pursuant to this Paragraph shall survive termination of this Consent Decree.

27.    Mechanism for Title V Incorporation: The incorporation of the requirements of this Consent Decree into Title V Permits shall be in accordance with state Title V rules, including applicable administrative amendment provisions of such rules.

28.    Using the procedures set forth in Section XIV (Notices), Defendant shall provide

22

U.S. EPA and the State in which the Facility is located with a copy of each application for a federally enforceable permit necessary to implement the requirements of this Consent Decree that is filed after the Effective Date, as well as a copy of any permit proposed as a result of such application, to allow for timely participation in any public comment opportunity. If, as of the Effective Date, Defendant has received any permit necessary to implement the requirements of this Consent Decree, then no later than 30 days after the Effective Date Defendant shall submit copies of such permits to U.S. EPA using the procedures set forth in Section XIV (Notices). U.S. EPA may excuse all or part of the latter submission in writing if copies of such permits have already been submitted prior to the Effective Date.

29.    Emission Credit Generation: Defendant will neither generate nor use any $SO_2$ or acid mist emission reductions resulting from any projects conducted pursuant to this Consent Decree for the purpose of obtaining netting credits or offsets in any Prevention of Significant Deterioration (PSD), major NSR, and/or minor NSR permit or permit proceeding. However, nothing in this Paragraph shall be construed to limit the generation and use of emissions credits respecting $SO_2$ or acid mist emission reductions that are either more stringent than the emissions limits established under the Consent Decree or achieved from sources not covered under the Consent Decree, as well as reductions of any other pollutant at any source.

## VII.    REPORTING REQUIREMENTS

30.    Defendant shall submit the following reports:

a.    For each Sulfuric Acid Plant, Defendant shall submit to U.S. EPA and the State Plaintiff in which the Plant is located, design specifications documenting how Defendant intends to meet the requirements of Paragraph 11, no later than one year before the date specified in Paragraph 11 for compliance with the short-term $SO_2$ emissions limit specified in Paragraph 11.

b.    After the Effective Date and before the termination of this Consent Decree,

23

Defendant shall submit to U.S. EPA and to the State Plaintiffs a semi-annual progress report no later than January 31 and July 31 of each year. Each semi-annual progress report shall contain the following information with respect to the six months preceding its submission: (1) work performed and progress made toward implementing the requirements of Section V above; (2) any significant modifications to previously-submitted design specifications of any pollution control system, or to monitoring equipment, required to comply with the requirements of Section V above; (3) any significant problems encountered or anticipated in complying with the requirements of Section V above, together with implemented or proposed solutions; (4) a summary of the emissions monitoring and testing data collected pursuant to this Consent Decree; (5) status of permit applications and a summary of all permitting activity pertaining to compliance with this Consent Decree; and (6) any reports to State agencies pertaining to compliance with this Consent Decree.

      c.      If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree or of any applicable permit, Defendant shall notify the United States and the applicable State Plaintiff of such violation and its duration or anticipated likely duration, in writing, within 30 working days of the day Defendant first becomes aware of the violation or potential violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 days of the day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section IX of this Consent Decree (Force Majeure).

      d.      If Defendant exercises its option to keep a Sulfuric Acid Plant in operation

when a Malfunction occurs during a Startup pursuant to the first sentence of Paragraph 12.b, Defendant shall notify the United States and the applicable State Plaintiff in writing, within 30 working days of the day that Defendant first becomes aware of the Malfunction. Defendant's notice shall include: 1) an explanation of the Malfunction's likely cause; 2) the estimated emissions on which Defendant based its decision to keep the Plant in operation rather than shutting down the Plant; 3) the remedial steps Defendant has taken, or will take, to prevent or minimize emissions from the Malfunction. If the cause of the Malfunction cannot be fully explained at the time the notice is due, Defendant shall so state in the Notice, and shall then investigate the cause of the Malfunction and submit an amendment to the notice, including a full explanation of the cause of the Malfunction, within 30 days of the day Defendant becomes aware of the cause of the Malfunction. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section IX of this Consent Decree (Force Majeure).

  e. Whenever any violation of this Consent Decree or of any applicable permit or any other event affecting Defendant's performance under this Decree, or the performance of its Sulfuric Acid Plant, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify U.S. EPA and the State in which the Sulfuric Acid Plant is located, orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of, or should have known of, the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

31. All reports shall be submitted to the persons and in the manner designated in Section XIV of this Consent Decree (Notices).

32. Each report submitted by Defendant under this Section shall be signed by a plant manager, a corporate official responsible for environmental management and compliance, or a corporate official responsible for plant engineering management of the Defendant, and shall

25

include the following certification:

> I certify under penalty of law that I have examined and am familiar with the
> information submitted in this document and all attachments and that this
> document and its attachments were prepared either by me personally or
> under my direction or supervision in a manner designed to ensure that
> qualified and knowledgeable personnel properly gather and present the
> information contained therein. I further certify, based on my personal
> knowledge or on my inquiry of those individuals immediately responsible for
> obtaining the information, that the information is true, accurate and
> complete. I am aware that there are significant penalties for submitting false
> information, including the possibility of fines and imprisonment for
> knowingly and willfully submitting a materially false statement.

33.     The reporting requirements of this Consent Decree do not relieve Defendant of any

reporting obligations required by the Act or implementing regulations, or by any other federal,

state, or local law, regulation, permit, or other requirement. The reporting requirements of this

Section are in addition to any other reports, plans or submissions required by other Sections of

this Consent Decree.

34.     Any information provided pursuant to this Consent Decree may be used by the

United States in any proceeding to enforce the provisions of this Consent Decree and as

otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

35.     Defendant shall be liable for stipulated penalties to the United States and to the State

Plaintiff in which the Facility is located for violations of this Consent Decree as specified

below, unless excused under Section IX (Force Majeure). Any stipulated penalties due under

this Section shall be paid in accordance with Paragraph 48 below. All transmittal

correspondence shall state that any such payment is for payment of stipulated penalties and

shall include the same identifying information required by Paragraphs 8.a through 8.d above.

36.     Failure to Pay Civil Penalty: If Defendant fails to pay any portion of the civil penalty

required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendant shall

pay a stipulated penalty of $1,000 per day for each day that the payment is late. Late payment

26

of the civil penalty shall be made in accordance with Paragraphs 8.a through 8.d above. Each stipulated penalty due under this Paragraph shall be paid exclusively to the Party to whom Defendant failed to make timely payment of the full civil penalty due.

37.    Emission Limits: The following stipulated penalties shall accrue per violation per day for each violation of a short-term $SO_2$ emission limit or an acid mist emission limit specified in Paragraphs 11, 12, 13, or 14 above:

a.    Where the violation is less than 10% in excess of the applicable emission limit:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1000 | 1st through 30th day |
| $2000 | 31st day and beyond |

b.    Where the violation is equal to or greater than 10% in excess of the emission limit:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2000 | 1st through 14th day |
| $3000 | 15th day through 30th day |
| $4000 | 31st day and beyond |

38.    Mass Caps: For each violation, in any period of 12 consecutive months, of a Mass Cap identified in Paragraph 11 above, a stipulated penalty shall accrue of $150,000 per violation. In case the Mass Cap is exceeded in overlapping 12-month periods, each consecutive 12-month period in which the Mass Cap is exceeded shall be a separate violation.

39.    Monitoring Requirements: The following stipulated penalties shall accrue per violation per day for each violation of any requirement identified in Paragraph 19:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $3500 | 1st through 14th day |

27

| | |
|---|---|
| $5000 | 15th through 30th day |
| $7500 | 31st day and beyond |

40.     Performance Testing: The following stipulated penalties shall accrue per violation per day for each violation of any of requirements identified in Paragraph 20 relating to performance testing:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2000 | 1st through 14th day |
| $3000 | 15th through 30th day |
| $4000 | 31st day and beyond |

41.     Best practices and NSPS: The following stipulated penalties shall accrue per violation per day for each violation of any requirement identified in Paragraphs 16 and 17 relating to NSPS applicability and best practices:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2000 | 1st through 14th day |
| $3000 | 15th through 30th day |
| $4000 | 31st day and beyond |

42.     Permitting Requirements: The following stipulated penalties shall accrue per violation per day for each violation of any requirement identified in Section VI of this Consent Decree relating to permitting.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1000 | 1st through 14th day |
| $1500 | 15th through 30th day |
| $2000 | 31st day and beyond |

43.     Reporting Requirements: The following stipulated penalties shall accrue per

violation per day for each violation of any requirement of Section VII of this Consent Decree relating to reporting and notification:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th day |
| $500 | 15th through 30th day |
| $1000 | 31st day and beyond |

44.     The following stipulated penalties shall accrue per violation per day for Defendant's failure to comply with any requirement, not specifically referenced in Paragraphs 36 through 43 above, of this Consent Decree or of any plan or schedule approved under this Consent Decree, within the specified time established by or approved under this Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th day |
| $500 | 15th through 30th day |
| $1000 | 31st day and beyond |

45.     Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree. Defendant shall pay any stipulated penalty within 30 days of receiving the United States' or the State Plaintiff's written demand. The United States and/or the State Plaintiff in which the Facility is located may seek stipulated penalties under this Section. Where both sovereigns seek stipulated penalties for the same violation of this Consent Decree, Defendant shall pay 50 percent to the United States and 50 percent to the State Plaintiff. Where only one sovereign demands stipulated penalties for a violation, it shall make that demand on its own behalf, and the Defendant shall pay the full amount of the stipulated penalties due for the violation to that

29

sovereign, and Defendant shall not be liable for additional stipulated penalties to any other sovereign for that violation.

46.     The United States and each State Plaintiff may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree. The determination by one sovereign not to seek stipulated penalties, or subsequently to waive or reduce the amount it seeks, shall not preclude the other sovereign from seeking stipulated penalties up to the full amount owing to that sovereign.

47.     Stipulated Penalties shall continue to accrue as provided in Paragraph 45 above, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of U.S. EPA or the State Plaintiff that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, at the rate specified in 28 U.S.C. § 1961, to the United States and/or the State Plaintiff within 30 days of the effective date of the agreement or the receipt of U.S. EPA's or the State Plaintiff's decision or order.

b.     If the dispute is appealed to the Court and the United States and/or the State Plaintiff prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, at the rate specified in 28 U.S.C. § 1961, within 60 days of receiving the Court's decision or order, except as provided in Subparagraph c, below.

c.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest at the rate specified in 28 U.S.C. § 1961, no later then 30 days after the administrative decision or judicial order, judgment or decree resolving the dispute becomes final and not subject to any further appeal.

48.     Defendant shall pay stipulated penalties owing to the United States in accordance with Paragraph 8.a, above, or by certified or cashier's check in the amount due, payable to the

30

"U.S. Department of Justice," referencing DOJ No. 90-5-2-1-08181 and United States Attorney's Office file number 2007VO1500, and delivered to the office of the United States Attorney, Southern District of Ohio, 221 E. 4th Street, Suite 400, Cincinnati, Ohio 45202. Defendant shall pay stipulated penalties owing to the State Plaintiffs in the same manner prescribed for payment of the civil penalty in Paragraph 8.b, c, and d above.

49.     No amount of the stipulated penalties to be paid by Defendant shall be used to reduce its federal or state tax obligations.

50.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest at the rate specified in 28 U.S.C. § 1961, accruing as of the date payment became due.

51.     Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the Stipulated Penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of the NSPS, Subparts A or H, or the PSD or non-attainment NSR requirements, Defendant shall be allowed a credit, for any Stipulated Penalties paid, against any statutory penalties imposed for such violation.

IX.     FORCE MAJEURE

52.     A "Force Majeure Event" is any event beyond the control of Defendant, its contractors, or any entity controlled by Defendant that delays the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible.

53.     "Force Majeure" does not include Defendant's financial inability to perform any

31

obligation under this Consent Decree. Unanticipated or increased costs or expenses associated with the performance of Defendant's obligations under this Consent Decree, or Defendant's failure to make complete and timely application for any required approval or permit, shall not constitute circumstances beyond Defendant's control nor serve as the basis for an extension of time under this Section IX.

54.     If any event occurs which causes or may cause a delay or impediment to performance in complying with any provision of this Consent Decree, Defendant shall notify U.S. EPA and the affected State Plaintiff(s): (a) orally or by electronic or facsimile transmission as soon as possible, but not later than 72 hours after the time Defendant first knew of the event or should have known of the event by the exercise of due diligence, and (b) in writing not later than seven days after the time Defendant first knew of the event or should have known of the event by the exercise of due diligence. In this notice, Defendant shall specifically reference this Paragraph 54 of this Consent Decree and describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendant to prevent or minimize the delay, the schedule by which those measures shall be implemented, and the reasons Defendant attributes the delay to a Force Majeure Event (if Defendant does so). Defendant shall take all necessary measures to avoid or minimize such delays. The written notice required by this Paragraph shall be effective upon the mailing of the same by overnight mail or by certified mail, return receipt requested, to U.S. EPA and the State Plaintiff(s) as specified in Section XIV (Notice).

55.     Failure by Defendant to comply with the notice requirements specified in Paragraph 54 above shall preclude Defendant from asserting any claims of Force Majeure with respect to the particular event involved.

56.     The United States, after consultation with the relevant State Plaintiff, will notify Defendant in writing regarding the United States' position regarding Defendant's claim of a

32

delay or impediment to performance within forty-five (45) days of receipt of the written Force Majeure notice provided under Paragraph 54.

57. If the United States, after consultation with the relevant State Plaintiff, agrees that the delay or impediment to performance has been or will be caused by a Force Majeure Event, the appropriate Parties shall stipulate in writing to an extension of the required deadline(s) for all requirement(s) affected by the Force Majeure Event for a period equivalent to the delay actually caused by the Force Majeure Event. Such stipulation shall be filed as a material modification to the Consent Decree pursuant to the procedures of Section XVII (Modification). Defendant shall not be liable for stipulated penalties for the period of any such extension.

58. If the United States, after consultation with the relevant State Plaintiff(s), does not accept Defendant's claim of Force Majeure, stipulated penalties will accrue as provided in Section VIII. No later than forty-five (45) days after receipt of the notice provided under Paragraph 56 above, Defendant may invoke formal dispute resolution with respect to the claim of Force Majeure, pursuant to Paragraphs 66 through 71 below, by filing a petition for determination with the Court. After Defendant has submitted its petition, the United States and the relevant State Plaintiff(s) shall have forty-five (45) working days to file their responses to the petition. If the Court determines that the delay or impediment to performance has been or will be caused by a Force Majeure Event, Defendant shall be excused as to that event(s) and delay (including stipulated penalties) for a period of time equivalent to the delay caused by the Force Majeure Event.

59. Defendant will bear the burden of proving that any delay in satisfying any requirement(s) of this Consent Decree was caused by or will be caused by a Force Majeure Event. Defendant shall also bear the burden of proving the duration and extent of any delay(s) attributable to such Force Majeure Event. Any extension of one compliance date based on a particular Force Majeure Event may, but shall not necessarily, result in an extension of a

33

subsequent compliance date or dates.

60.    Notwithstanding any other provision of this Consent Decree, this Court shall not draw any inferences nor establish any presumptions adverse to either party as a result of Defendant's serving of a Force Majeure notice or the Parties' inability to reach agreement with respect to the claim of Force Majeure.

61.    In appropriate circumstances, as part of the resolution of any matter submitted to this Court under this Section IX, the Parties involved in the dispute may agree to, or the Court may order, extension or modification of the schedule for completion of work under the Consent Decree to account for the delay in the work that occurred as a result of any Force Majeure Event claimed by Defendant that is agreed to by the United States or approved by this Court. Defendant shall be liable for stipulated penalties for its failure thereafter to complete the work in accordance with the extended or modified schedule.

### X.    DISPUTE RESOLUTION

62.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree. The procedures set forth in this Section do not apply to actions by the United States or a State Plaintiff to enforce obligations of the Defendant that have not been disputed in accordance with this Section.

63.    Except as otherwise expressly provided in this Consent Decree, the dispute resolution procedures set forth in this Section X shall be available to resolve any and all disputes arising under this Consent Decree, provided that the Party invoking the procedures has made a good faith attempt to resolve the matter with the other Party or Parties involved.

34

64.    The dispute resolution procedure required herein shall be invoked upon the giving of written notice by one of the Parties to this Consent Decree to another advising the other appropriate Party(ies) of a dispute pursuant to Section X. The notice shall describe the nature of the dispute and shall state the noticing Party's position with regard to such dispute. The Party or Parties receiving such notice will acknowledge receipt of the notice and the Parties shall expeditiously schedule a meeting to discuss the dispute informally not later then fourteen (14) days from the receipt of such notice.

65.    Disputes submitted to dispute resolution shall, in the first instance, be the subject of informal negotiations between the Parties. Such period of informal negotiations shall not extend beyond thirty (30) days from the date of the first meeting between representatives of the Parties, unless the Parties involved in the dispute agree that this period should be shortened or extended.

66.    In the event that the Parties are unable to reach agreement during such informal negotiations period, the United States and/or the relevant State Plaintiff(s), as applicable, shall provide Defendant with a written summary of its/their position regarding the dispute. The position advanced by the United States and/or the relevant State Plaintiff(s), as applicable, will be considered binding unless, within forty-five (45) days of Defendant's receipt of the written summary, Defendant invokes formal dispute resolution by filing with the Court a petition which describes the nature of the dispute and Defendant's position on the dispute. The United States and/or the relevant State Plaintiff(s) shall respond to the petition within forty-five (45) days of filing.

67.    In the event that the United States and the relevant State Plaintiff(s) are unable to reach agreement among themselves with regard to the Defendant's claim, the position of the United States shall be the Plaintiffs' final position. A dissenting State Plaintiff may file such other pleadings expressing its position as allowed by the Court.

68.     In a formal dispute resolution proceeding under this Section, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and the Act. The Court shall decide the dispute based upon applicable principles of law. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

69.     Where the nature of the dispute is such that a more timely resolution of the issue is required, the time periods set forth in this Section X may be shortened upon motion of one of the Parties to the dispute or by agreement of the Parties to the dispute.

70.     The Parties do not intend that the invocation of this Section X by a Party cause the Court to draw any inferences nor establish any presumptions adverse to either Party as a result of invocation of this Section.

71.     In appropriate circumstances, as part of the resolution of any matter submitted to this Court under this Section X, the Parties involved in the dispute may agree to, or the Court may order, an extension or modification of the schedule for completion of work under the Consent Decree to account for the delay in the work that occurred as a result of dispute resolution. Defendant shall be liable for stipulated penalties for its failure thereafter to complete the work in accordance with the extended or modified schedule. Invocation of dispute resolution with respect to any of Defendant's obligations under this Consent Decree shall not, of itself, excuse or extend the time for performance of any other obligation of Defendant under this Consent Decree.

## XI.     INFORMATION COLLECTION AND RETENTION

72.     The United States, the State Plaintiffs, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any of the Facilities covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

       a.     monitor the progress of activities required under this Consent Decree;

36

b.      verify any data or information submitted to the United States or a State

Plaintiff in accordance with the terms of this Consent Decree;

c.      obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.      obtain documentary evidence, including photographs and similar data; and

e.      assess Defendant's compliance with this Consent Decree.

73.     Until at least three years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relates in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, the United States or a State Plaintiff may request copies of any documents, records, or other information required to be maintained under this Paragraph.

74.     At the conclusion of the information retention period specified in the preceding Paragraph, Defendant shall notify the United States and the State Plaintiffs at least 90 days prior to destroying any document(s), record(s), or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or a State, Defendant shall deliver any such document(s), record(s), or other information to the requesting Plaintiff or Plaintiffs. Defendant may assert that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each

37

author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant. However, no documents, records, data, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

75. Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information (CBI) under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

76. The information retention requirements of Paragraphs 73 and 74 shall survive termination of this Consent Decree and shall be enforceable by this Court even after such termination. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

77. This Consent Decree resolves the civil liability of Defendant to the United States and the State Plaintiffs for the violations alleged in the Complaint and in the Complaints in Intervention filed in this action (and any Notices of Violation cited therein) from the date those claims accrued through the Effective Date of this Consent Decree.

78. The United States and the State Plaintiffs reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 77. This Consent Decree shall not be construed to limit the rights of the United States or the State Plaintiffs to obtain penalties or injunctive relief under the Act or

38

implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 77. The United States and the State Plaintiffs further reserve all legal and equitable remedies to address any situation that may present an imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

79. This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits. The United States and the State Plaintiffs do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, or with any other provisions of federal, State, or local laws, regulations, or permits.

80. This Consent Decree does not limit or affect the rights of Defendant or of the United States or the State Plaintiffs against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

81. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party that is not a Party to this Consent Decree.

## XIII. COSTS

82. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State Plaintiffs shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to enforce this Consent Decree or to collect

any portion of the civil penalty or any Stipulated Penalties due but not paid by Defendant.

## XIV. NOTICES

83. Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed to the United States Department of Justice, U.S. EPA Headquarters, and the U.S.

EPA Region and the State Plaintiff where the relevant Facility is located, as follows:

Notice or submission to the United States:

Chief, Environmental Enforcement Section   and
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, DC 20044-7611
Re: DOJ No. 90-5-2-1-08500

United States Attorney
Southern District of Ohio
221 E. 4th Street
Cincinnati, OH 45202
Re: 2007VO1500

Notice or submission to the United States or to U.S. EPA that concerns any or all of the Sulfuric
Acid Plants:

Air Enforcement Division Director
U.S. Environmental Protection Agency
Office of Civil Enforcement
Air Enforcement Division
U.S. Environmental Protection Agency
1200 Pennsylvania Ave, NW
Mail Code: 2242A
Washington, DC 20460

and

Leslie A. Kirby-Miles
U.S. Environmental Protection Agency
Office of Civil Enforcement
Air Enforcement Division
U.S. Environmental Protection Agency
1200 Pennsylvania Ave, NW
Mail Code: 2242A
Washington, DC 20460
including an electronic copy to
kirby-miles.leslie@epa.gov

and

Nathan Frank                          and    Andre Daugavietis

U.S. Environmental Protection Agency
Region 5
AE-17J
77 West Jackson. Blvd.
Chicago, IL 60604
including an electronic copy to
frank.nathan@epa.gov

U.S. Environmental Protection Agency
Region 5
C-14J
77 West Jackson. Blvd.
Chicago, IL 60604

Notice or submission to the United States or to U.S. EPA that concerns the Burnside Facility:

Jan Gerro                                         and     John L. Jones
U.S. Environmental Protection Agency                      U.S. Environmental Protection Agency
Region 6                                                  Region 6
1445 Ross Avenue                                          1445 Ross Avenue
Suite 1200                                                Suite 1200
Mailcode 6RC-ER                                           Mailcode 6ENAA
Dallas, TX 75202                                          Dallas, TX 75202

and

Jennifer Gibbs
U.S. Environmental Protection Agency
Region 6
1445 Ross Avenue
Suite 1200
Mailcode 6ENAT
Dallas, TX 75202

Notice or submission to United States or U.S. EPA that concerns the James River Facility:

J. Robert Stoltzfus                               and     Thomas Gleave
U.S. Environmental Protection Agency                      U.S. Environmental Protection Agency
Region III                                                Region III
Office of Chief Counsel (3RC10)                           Air Protection Division (3AP12)
1650 Arch Street                                          1650 Arch Street
Philadelphia, PA 19103                                    Philadelphia, PA 19103

Notice or submission to United States or U.S. EPA that concerns the Wurtland Facility:

Jennifer Lewis                                    and     Rosalyn Hughes
U.S. Environmental Protection Agency                      U.S. Environmental Protection Agency
Region 4                                                  Region 4
Atlanta Federal Center                                    Atlanta Federal Center
61 Forsyth Street, SW                                     61 Forsyth Street, SW
Atlanta, GA 30303                                         Atlanta, GA 30303

Notice or submission to the State Plaintiff(s) that concerns the Burnside Facility:

Peggy M. Hatch

Administrator, Enforcement Division
Office of Environmental Compliance
Louisiana Department of Environmental Quality
P. O. Box 4312
Baton Rouge, Louisiana 70821-4312

Notice or submission to the State Plaintiff(s) that concerns the Fort Hill Facility:

Thomas J. Kalman, P.E.
Manager, Enforcement Section
Division of Air Pollution Control
Ohio EPA
P.O. Box 1049
Columbus, Ohio 43216-1049

Notice or submission to the State Plaintiff(s) that concerns the James River Facility:

Director
Virginia Department of Environmental Quality
629 East Main Street
P.O. Box 10009
Richmond, VA 23240-0009

Notice or response to Defendant:

Bernard J. Reilly, Esq.
Corporate Counsel
E.I du Pont de Nemours and Company
DuPont Legal - D7082A
DuPont Building
1007 Market Street
Wilmington, DE 19898

Thomas E. Knauer, Esq.
Williams Mullen
1021 East Cary Street
Richmond, VA 23219

E.I du Pont de Nemours and Company
ATTN: Director, Sulfuric Acid Business
1007 Market Street
Wilmington, DE 19898

Any Party may, by written notice to the other Parties, change its designated notice recipient(s)

or notice address(es) provided above. Notices submitted pursuant to this Section shall be

deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual

agreement of the Parties in writing.

## XV.    EFFECTIVE DATE

84.    The Effective Date of this Consent Decree shall be the date upon which this Consent

Decree is entered by the Court.

## XVI.    RETENTION OF JURISDICTION

85.    The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing

compliance with the terms of this Decree.

## XVII.    MODIFICATION

86.    The terms of this Consent Decree may be modified only by a subsequent written

agreement signed by all the Parties.  Where the modification constitutes a material change to

any term of this Consent Decree, it shall be effective only upon approval by the Court. The O &

M Plans required by Paragraph 18 and the $SO_2$ CEMS Plans required by Paragraph 19.b may be

modified as provided in Paragraph 18 or upon written agreement of the Parties without Court

approval, unless any such modification effects a material change to the terms of this Consent

Decree or materially affects the Defendant's ability to meet the requirements or objectives of

this Decree.

## XVIII. TERMINATION

87.    After Defendant has maintained continuous satisfactory compliance with the

requirements of the Act and this Consent Decree for a period of one year after achieving

compliance with all of the requirements of this Consent Decree, has obtained all permits

required by this Consent Decree, and has paid the civil penalty and any accrued stipulated

penalties as required by this Consent Decree, Defendant may serve upon the United States and

the State Plaintiffs a Request for Termination stating that Defendant has satisfied those

43

requirements, together with all necessary supporting documentation.

88.     Following receipt by the United States and the State Plaintiffs of Defendant's
Request for Termination, the Parties shall confer informally concerning the Request for
Termination and any disagreement that the Parties may have as to whether Defendant has
satisfactorily complied with the requirements for termination of this Consent Decree. If the
United States after consultation with the State Plaintiffs agrees that the Decree may be
terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the
Decree.

89.     If the United States after consultation with the State Plaintiffs does not agree that the
Decree may be terminated, Defendant may move the Court for termination. However,
Defendant shall not file such a motion until 90 days after service of its Request for Termination.
On any such motion, Defendant shall bear the burden of proving that the conditions necessary
for termination of the Consent Decree have been satisfied.

## XIX.   PUBLIC PARTICIPATION

90.     This Consent Decree shall be lodged with the Court for a period of not less than 30
days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States
reserves the right to withdraw or withhold its consent if the comments regarding the Consent
Decree disclose facts or considerations indicating that the Consent Decree is inappropriate,
improper, or inadequate. Defendant consents to entry of this Consent Decree without further
notice.

91.     The Parties agree and acknowledge that final approval by Plaintiff-Intervenor the
State of Louisiana, Department of Environmental Quality, and entry of this Consent Decree are
subject to the requirements of La. R.S. 30:2050.7, which provides for public notice of this
Consent Decree in newspapers of general circulation and the official journals of the parish in
which the Burnside Facility is located, an opportunity for public comment, consideration of any

44

comments, and concurrence by the State Attorney General. The State of Louisiana reserves the right to withdraw or withhold consent if the comments regarding this Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper or inadequate.

### XX. SIGNATORIES/SERVICE

92.     Each undersigned representative of Defendant and the State Plaintiffs, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice (or his or her designee) certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

93.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

94.     Defendant agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

95.     Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.   INTEGRATION

96.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, except for any plans or other deliverables that are submitted and approved pursuant to this Decree, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, and no such extrinsic document or statement of any kind shall be used in construing the terms of this Decree.

## XXII.  FINAL JUDGMENT

97.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court in this action as to the United States, the State Plaintiffs, and Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXIII. APPENDIX

98.    The following appendix is attached to and incorporated into this Consent Decree:
"Appendix A" is the table of short-term $SO_2$ emission limits applicable to three-hour periods wholly or partially occurring during Startup.

46

Dated and entered this 24th day of _____ January _____, 2007. 2008.


UNITED STATES DISTRICT JUDGE
Southern District of Ohio

47

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. E.I. du Pont de Nemours and Company</u> (S.D. Ohio), relating to alleged violations of the Clean Air Act:

FOR PLAINTIFF UNITED STATES OF AMERICA:

RONALD J. TEXPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

STEVE C. GOLD
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
Post Office Box 7611
Washington, D.C. 20044
(202) 514-5260
(202) 616-6584 (FAX)
steve.gold@usdoj.gov

GREGORY G. LOCKHART
United States Attorney for the
Southern District of Ohio

Gerald Kaminski
Assistant U.S. Attorney
221 E. 4th Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
(513) 684-6385
Gerald.kaminski@usdoj.gov
Bar # 0012532

48

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. E.I. du Pont de Nemours and Company</u> (S.D. Ohio), relating to alleged violations of the Clean Air Act:


MARY A. GADE
Regional Administrator
U.S. Environmental Protection Agency
Region 5

49

THE UNDERSIGNED PARTIES enter into this
Consent Decree in the matter of <u>United States v.</u>
<u>E.I. du Pont de Nemours and Company</u> (S.D.
Ohio), relating to alleged violations of the Clean
Air Act:

GRANTA Y. NAKAYAMA
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

ADAM M. KUSHNER
Director
Air Enforcement Division
Office of Civil Enforcement

50

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. E.I. du Pont de Nemours and Company</u> (S.D. Ohio), relating to alleged violations of the Clean Air Act:

RICHARD E. GREENE
Regional Administrator
U.S. Environmental Protection Agency
Region 6

51

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. E.I. du Pont de Nemours and Company (S.D. Ohio), relating to alleged violations of the Clean Air Act:

J.I. PALMER, JR.
Regional Administrator
U.S. Environmental Protection Agency
Region 4

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States</u> <u>v. E.I. du Pont de Nemours and Company</u> (S.D. Ohio), relating to alleged violations of the Clean Air Act:

DONALD S. WELSH
Regional Administrator
U.S. Environmental Protection Agency
Region III

53

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. E.I. du Pont de Nemours and Company (S.D. Ohio), relating to alleged violations of the Clean Air Act:

CARL JOSEPHSON
Senior Assistant Attorney General
Virginia State Bar Number 12496
Commonwealth of Virginia
Office of the Attorney General
Environmental Section
900 East Main Street
Richmond, VA 23219
(804) 225-4004
(Fax) (804) 786-0034

DAVID K. PAYLOR
Director
Virginia Department of Environmental Quality
Street Address: 629 East Main Street
Richmond, Virginia 23219
Mailing Address: P.O. Box 10009
Richmond, Virginia 23240
(804) 698-4000
(Fax) (804) 698-4500

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States</u> <u>v. E.I. du Pont de Nemours and Company</u> (S.D. Ohio), relating to alleged violations of the Clean Air Act:

Respectfully submitted,

MARC DANN
ATTORNEY GENERAL OF OHIO

TERI J. FINFROCK (0057903)
Assistant Attorney General
Environmental Enforcement Section
Public Protection Division
30 East Broad Street - 25th Floor
Columbus, Ohio 43215-3400
Telephone: (614) 466-2766
Facsimile: (614) 644-1926
tfinfrock@ag.state.oh.us

*Counsel for Plaintiff*
*State of Ohio*

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States Of America, et al. v. E.I. du Pont de Nemours & Co.</u>, a civil action, subject to the public notice and comment requirements.

PRELIMINARY APPROVAL BY PLAINTIFF-INTERVENOR THE STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF ENVIRONMENTAL QUALITY:

HAROLD LEGGETT, Ph.D.
Assistant Secretary
Office of Environmental Compliance
Louisiana Department of Environmental Quality

JAY L. GLORIOSO (LA. # 28050)
Attorney III
Office of the Secretary
Legal Affairs Division
Louisiana Department of Environmental Quality
Post Office Box 4302
Baton Rouge, Louisiana 70821-4302

56

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. E. I. du Pont de Nemours and Company</u> (S.D. Ohio), relating to alleged violations of the Clean Air Act:

FOR DEFENDANT E. I. DU PONT DE NEMOURS AND COMPANY:

Gary W. Spitzer
Vice President & General Manager
DuPont Chemical Solutions Enterprise

The following is the name and address of Settling Defendant's agent for service and counsel.

Bernard J. Reilly, Esq.
DuPont Legal D-7082A
1007 Market Street
Wilmington, DE 19898

## APPENDIX A

## SHORT-TERM SO$_2$ EMISSION LIMITS DURING STARTUP

| 3-hour Time period (Hours after Startup commences) | Short-Term Sulfur Dioxide Emission Limit, lbs/ton, applicable to: | | | |
|---|---|---|---|---|
| | **Burnside** | **James River** | **Fort Hill** | **Wurtland** |
| 1st through 3rd hr. | 15.0 | 15.0 | 15.0 | 15.0 |
| 2nd through 4th hr. | 15.0 | 15.0 | 15.0 | 15.0 |
| 3rd through 5th hr. | 15.0 | 15.0 | 15.0 | 15.0 |
| 4th through 6th hr. | 15.0 | 15.0 | 15.0 | 15.0 |
| 5th through 7th hr. | 15.0 | 15.0 | 15.0 | 15.0 |
| 6th through 8th hr. | 15.0 | 15.0 | 15.0 | 15.0 |
| 7th through 9th hr. | 15.0 | 15.0 | 15.0 | 15.0 |
| 8th through 10th hr. | 15.0 | 15.0 | 15.0 | 15.0 |
| 9th through 11th hr. | 15.0 | 15.0 | 15.0 | 15.0 |
| 10th through 12th hr. | 15.0 | 15.0 | 15.0 | 15.0 |
| 11th through 13th hr. | 12.0 | 12.0 | 12.0 | 12.0 |
| 12th through 14th hr. | 9.0 | 9.0 | 9.0 | 9.0 |
| 13th through 15th hr. | 6.0 | 6.0 | 6.0 | 6.0 |
| 14th through 16th hr. | 6.0 | 6.0 | 6.0 | 6.0 |
| 15th through 17th hr. | 6.0 | 6.0 | 6.0 | 6.0 |
| 16th through 18th hr. | 6.0 | 6.0 | 6.0 | 6.0 |
| 17th through 19th hr. | 6.0 | 6.0 | 6.0 | 6.0 |
| 18th through 20th hr. | 6.0 | 6.0 | 6.0 | 6.0 |
| 19th through 21st hr. | 6.0 | 6.0 | 6.0 | 6.0 |
| 20th through 22nd hr. | 6.0 | 6.0 | 6.0 | 6.0 |
| 21st through 23rd hr. | 6.0 | 6.0 | 6.0 | 6.0 |
| 22nd through 24th hr. | 6.0 | 6.0 | 6.0 | 6.0 |
| 23rd through 25th hr. | 4.8 | 4.5 | 4.7 | 4.6 |
| 24th through 26th hr. | 3.6 | 3.0 | 3.5 | 3.1 |

Note: Emission limits for the 11th through 13th hour and 12th through 14th hour are weighted averages of 15.0 and 6.0 lbs/ton. Emission limits for the 23rd through 25th hour and 24th through 26th hour are weighted averages of 6.0 lbs/ton and the short-term emission limit for each Sulfuric Acid Plant as specified in Paragraph 11 of the Consent Decree. Beginning with the 3-hour period consisting of the 25th through 27th hour after Startup commences, the emission limits specified in Paragraph 11 of the Consent Decree apply.